Case: 1:21-mj-00211
Assigned to: Judge Faruqui, Zia M
Assign Date: 2/9/2021
Description: COMPLAINT W/ARREST WARRANT

# STATEMENT OF FACTS

Your affiant, Jonathan Fugitt, is a Special Agent with the Federal Bureau of Investigation Washington, D.C. Field Office ("WFO"). Currently, I am a tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 6, 2021, during the above-referenced events, Officer K.P. ("K.P.") of the Washington D.C. Metropolitan Police Department ("MPD") was working his[1] evening shift in his official capacity. During that shift, MPD Officer K.P. was directed to report to the U.S. Capitol building to assist the U.S. Capitol Police in their duties to maintain security of the U.S. Capitol building.

Between 5:00 pm and 6:00 pm, Officer K.P., along with MPD CDU (Civil Disobedience Unit) 63, formed a line at the west terrace of the U.S. Capitol building and began moving towards the west lawn to move individuals off Capitol grounds. CDU 63 chanted "move back" as it ordered the crowd of individuals on the west lawn to move west and away from the U.S. Capitol building. See the map below:



CDU 63 advanced on the crowd as a line and managed to create space between the officers and the crowd. At approximately 5:47 pm, while still on the west lawn, an individual later identified as DAVID BLAIR positioned himself between the officers and the crowd and began to walk in the space while waiving a Confederate flag attached to what BLAIR later admitted was a lacrosse stick. Below are screen shots from K.P.'s body worn camera depicting BLAIR waiving the Confederate flag while standing in front of the crowd that was pushed back on the west lawn:

---

[1] Unless otherwise stated, for the safety of victims and witnesses, victims and confidential sources of information are referred to using male pronouns (regardless of gender) and conversations about victims and confidential sources of information have been altered as necessary to reflect male pronouns.



While walking back and forth in the space between officers and the crowd, BLAIR yelled words to the effect of, "hell naw, quit backing up, don't be scared, we're Americans, don't be scared, let's go quit backing up, quit being scared." As officers advanced, Officer K.P. shoved BLAIR back toward the crowd using his baton. BLAIR jumped back and turned to face Officer K.P., while squaring up his body to stand in front of Officer K.P. BLAIR held the lacrosse stick attached to the Confederate flag with two hands and started shouting, "what's up motherfucker, what's up, what's up bitch?" Below are screen shots from Officer K.P.'s body worn camera depicting BLAIR holding the stick with both hands:





BLAIR thrust the stick at Officer K.P towards the chest area, striking him.  Immediately thereafter, several officers were able to restrain BLAIR on the ground using their batons.  BLAIR was then removed from the west lawn and transported closer to the U.S. Capitol building where his arrest would be processed.  While in handcuffs and not in response to any questions prompted by any members of MPD, BLAIR stated words to the effect of "I understand, what I did, the one motherfucker swung at me so I kinda switched . . . so I apologize, we're done though."  BLAIR provided MPD with a phone number ending in -7210.

MPD transported BLAIR to the U.S. Capitol building, where he was searched before he was turned over to United States Capitol Police (USCP) for processing.  During the search incident to arrest, a black bag with "TEMPO" in yellow block lettering and light in color drawstrings was recovered from BLAIR's back.  Within the bag, MPD recovered a silver knife, which BLAIR explained he had on him "cause I was worried about Antifa and other people trying to jump me."  Additional items were also recovered from the bag, including tape, which BLAIR acknowledged "looks damn suspicious" and BLAIR explained "I had a flag with me, I taped it."

While in USCP custody, BLAIR was transported to George Washington Hospital for a laceration to his head which he sustained after officers responded with batons following BLAIR's attack on Officer K.P. BLAIR was then transported to the United States Capitol Police station, where his arrest was processed.

On January 21, 2021,  a search warrant was issued by United States Magistrate Judge Thomas M. DiGirolamo for the District of Maryland, 1:21-mj-162-TMD, authorizing the search of BLAIR's residence.  On January 22, 2021, your affiant participated in the execution of the that warrant.  When the FBI agents arrived, both occupants of the residence, BLAIR and his mother Gaye L. Blair ("Ms. Blair") were awake.

When agents went to what was identified as BLAIR's bedroom, the bed was covered with items, many of which agents were authorized to seize pursuant to the warrant.  BLAIR

volunteered that he had done this because "he figured that [we'd] be coming and these were what you were looking for," or words to that effect.  Items seized from BLAIR's bedroom, which were all inside one large bag, include items consistent with what BLAIR was wearing on January 6, 2021:

  a.  One grey Nike hoodie, size medium.

  b.  One white Under Armor thermal shirt (bloody).

  c.  One khaki cargo pants (bloody).

  d.  One black Helly Hansen jacket, size medium.

  e.  Clear plastic bag with United States Capitol Police property tag attached.

  f.  One black Tempo bag.

  g.  One black neck gator with skull decal (bloody).

  h.  One grey Under Armor long sleeve hooded sweatshirt, size medium.

  i.  One pair of Oakley tactical gloves.

  j.  One black Columbia cloth belt.

  k.  One black string.

  l.  One roll of grey duct tape.

  m.  One white wristband with "DAVID BLAIR" on it from GW University Hospital.

  n.  One blue wristband with "DAVID BLAIR" on it from when BLAIR was arrested and booked for assaulting a law enforcement officer on US Capitol grounds.

Also, seized from the BLAIR premises was a Mead notebook containing writing regarding for certain events pertaining to January 6, 2021.  The notebook included the following statements, with the phrase "Save USA" written on the top of the page:

RIP Covid victims, Officer Brian Sicknick, David Dorn

1.  Wasn't there for violence / or to overthrow
2.  Jail story
3.  Polarization of USA / Exploitable weaknesses unique *(illegible word)*
    –  Solid media
    –  News dividing us
    –  Normalization of political violence / word to the effect of "burning business"

— Tribalism
4.   Hypocricy (*misspelt*)

Additionally, various items were observed on BLAIR's bed and throughout the premises which were not seized pursuant to the warrant. On BLAIR's bed was an AR-15 style rifle with a loaded rifle magazine next to the rifle. A rifle lower receiver was also located on BLAIR's bed. A records check was conducted on the rifle with the results determining that the rifle had not been stolen. Paperwork was located in the residence with both the rifle and the receiver listed as registered to BLAIR. Therefore, the rifle and receiver were not seized. In the corner of the bedroom, leaning against the wall, was a fully assembled lacrosse stick. Located in the kitchen of the residence, inside a drawer, were brass knuckles with a confederate flag print. Located in the basement of the residence on a desk, was a small cardboard box with a confederate flag on the cover of the box (presumably the packing for the aforementioned brass knuckles). Also located on the same desk in the bsaement, which appeared to be mainly used by BLAIR given the items observed on and around the desk, were rifle cartridges and a rifle stock.

BLAIR is currently charged in D.C. Superior Court with misdemeanor assault on a law enforcement officer in connection with that arrest. The government intends to dismiss that case should this court authorize the complaint requested in connection with this statement of facts.

Based on the foregoing, your affiant submits that there is probable cause to believe that BLAIR violated 18 U.S.C. § 1752(a)(1), (2) and (4), which makes it a crime, with respect to subdivision (1), to knowingly enter or remain in any restricted building or grounds without lawful authority to do; with respect to subdivision (2), to knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and with respect to subdivision (4), to knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; and to attempt or conspires to violate those subdivisions. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that BLAIR violated 40 U.S.C. § 5104(e)(2)(D) and (F) which makes it a crime to willfully and knowingly, with respect to subdivision (D), utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and with respect to subdivision (F), engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant further submits there is probable cause to believe that BLAIR violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct,

impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.  For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.  This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Finally, your affiant submits there is probable cause to believe that BLAIR violated 18 U.S.C. § 111(a)(1), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate or interfere with any officer of the United States engaged in official duties, or any person assisting such an officer.

_____

Jonathan Fugitt,
Special Agent - FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 9th day of February 2021.

_____

ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE